2024-1104

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

METROPOLITAN AREA EMS AUTHORITY aka MedStar Mobile Healthcare, VALLEY AMBULANCE AUTHORITY, QUAKER VALLEY AMBULANCE AUTHORITY, ALTOONA LOGAN TOWNSHIP MOBILE MEDICAL EMERGENCY DEPARTMENT AUTHORITY dba AMED,

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

---

Petition for review pursuant to 38 U.S.C. § 502

---

RESPONDENT'S RESPONSE TO PETITIONERS'
MOTION FOR STAY PENDING JUDICIAL REVIEW

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

BORISLAV KUSHNIR
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044

January 16, 2024

Attorneys for Respondent

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................1

BACKGROUND ..................................................................2

ARGUMENT .......................................................................6

    I.    Petitioners' Motion Should Be Denied As Moot ................................. 6

    II.    Alternatively, Petitioners' Motion Should Be Denied Because Petitioners Do Not Satisfy The Conditions For A Stay ...................... 8

        A.    Petitioners Have Not Made A Strong Showing That They Are Likely To Succeed On The Merits...................................... 9

        B.    Petitioners Will Not Be Harmed, Irreparably Or Otherwise, Absent A Stay .......................................................... 14

        C.    The Public Interest Does Not Favor A Stay Either.................. 17

CONCLUSION ....................................................................18

# TABLE OF AUTHORITIES

## Cases

*Ass'n of Priv. Sector Colleges & Universities v. Duncan*,
  681 F.3d 427 (D.C. Cir. 2012)................................................................12

*Biery v. United States*,
  818 F.3d 704 (Fed. Cir. 2016) ...............................................................7

*Camp v. Pitts*,
  411 U.S. 138 (1973) ...............................................................................12

*Computer Scis. Corp. v. United States*,
  51 Fed. Cl. 297 (2002)...........................................................................15

*Conkright v. Frommert*,
  556 U.S. 1401 (2009) .............................................................................14

*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017)..........................................................16-17

*Eskridge Rsch. Corp. v. United States*,
  92 Fed. Cl. 88 (2010)..............................................................................15

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016)...............................................................15

*Gerdau Ameristeel Corp. v. United States*,
  519 F.3d 1336 (Fed. Cir. 2008) ..............................................................6

*Hall v. Beals*,
  396 U.S. 45 (1969) ....................................................................................6

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ..................................................................................9

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) ..................................................................................8

*Louisiana v. Am. Rivers*,
  142 S. Ct. 1347 (2022).............................................................................8

*Molon Motor & Coil Corp. v. Nidec Motor Corp.*,
  946 F.3d 1354 (Fed. Cir. 2020) ..............................................................7

*Ng v. Bd. of Regents of Univ. of Minn.*,
  64 F.4th 992 (8th Cir. 2023) .................................................................15

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................... *passim*

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................................14

*Shawnee Tribe v. Mnuchin*,
  984 F.3d 94 (D.C. Cir. 2021)................................................................17

*SVD Stars II, LLC v. United States*,
  138 Fed. Cl. 483 (2018)........................................................................15

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ............................................................16

**Statutes**

38 U.S.C. § 111(a) .....................................................................................2, 10

38 U.S.C. § 111(b) ...................................................................................11, 13

38 U.S.C. § 502 ...............................................................................................3

38 U.S.C. § 1728 ....................................................................................4, 9, 10

VOW to Hire Heroes Act of 2011,
  Pub. L. No. 112-56, 125 Stat. 711 .........................................................2

**Regulations**

38 C.F.R. § 70.2 ...........................................................................................11

38 C.F.R. § 70.10 .........................................................................................11

38 C.F.R. § 70.30 ...........................................................................................2

Change in Rates VA Pays for Special Modes of Transportation,
85 Fed. Reg. 70,551 (Nov. 5, 2020) (proposed rule) ...............................................3

Change in Rates VA Pays for Special Modes of Transportation,
88 Fed. Reg. 10,032 (Feb. 16, 2023) (final rule)................................... 3, 7, 12, 16

Delay of Effective Date,
88 Fed. Reg. 90,120 (Dec. 29, 2023)..................................................... 6, 7, 13, 16

2024-1104

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

METROPOLITAN AREA EMS AUTHORITY aka MedStar Mobile Healthcare,
VALLEY AMBULANCE AUTHORITY, QUAKER VALLEY AMBULANCE
AUTHORITY, ALTOONA LOGAN TOWNSHIP MOBILE MEDICAL
EMERGENCY DEPARTMENT AUTHORITY dba AMED,

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

---

RESPONDENT'S RESPONSE TO PETITIONERS'
MOTION FOR STAY PENDING JUDICIAL REVIEW

---

## **INTRODUCTION**

This appeal concerns a challenge to a Department of Veterans Affairs (VA)
final rule. But rather than allow the Court to thoroughly consider the parties' fully
developed positions, petitioners have asked for a stay of agency action before
merits briefing has even begun. Petitioners maintain that such extraordinary relief
is warranted here because they are likely to succeed on the merits, they will suffer
irreparable economic harm in the absence of a stay, and the public interest favors
immediate action. Petitioners are incorrect; in fact, a stay pending judicial review
is not justified under the circumstances of this case.

To start, the Court should deny petitioners' motion because VA has already delayed the rule's implementation by a full year, thus preserving the status quo while the parties brief the merits. This action by VA has rendered petitioners' request to preserve the status quo through a Court order moot. But even without such action, a stay would be unwarranted. Petitioners have failed to demonstrate a "strong" likelihood of success on the merits, as they must to obtain a stay. Nor have they established the kind of irreparable injury or public interest that could support a stay. Accordingly, for the reasons explained more fully below, the Court should deny petitioners' motion.

## BACKGROUND

The Veterans Health Administration (VHA), a component of VA, is statutorily authorized to pay the expense of transporting eligible veterans for medical purposes like examination, treatment, or care. *See* 38 U.S.C. § 111(a). Pursuant to this authority, VHA pays "[t]he actual cost of a special mode of transportation." 38 C.F.R. § 70.30(a)(4). But in 2011, Congress enacted legislation authorizing VA to modify the rate VHA pays for transportation by ambulance, such that the VHA rate would conform to Medicare's ambulance fee schedule. VOW to Hire Heroes Act of 2011, Pub. L. No. 112-56, § 263, 125 Stat. 711, 732 (Nov. 21, 2011). In the wake of this amendment, Title 38 provides:

> In the case of transportation of a person to or from a
> [VA] facility by ambulance, the Secretary may pay the

2

> provider of the transportation the lesser of the actual
> charge for the transportation or the amount determined
> by the fee schedule established under section 1834(*l*) of
> the Social Security Act (42 U.S.C. 1395m(*l*)) unless the
> Secretary has entered into a contract for that
> transportation with the provider.

38 U.S.C. § 111(b)(3)(C).

In 2020, VA proposed to put in place the very change Congress had authorized. *See* Change in Rates VA Pays for Special Modes of Transportation, 85 Fed. Reg. 70,551 (Nov. 5, 2020) (proposed rule). VA's publication of the proposed rule triggered a comment period, during which VA received six comments.[1] Change in Rates VA Pays for Special Modes of Transportation, 88 Fed. Reg. 10,032, 10,033 (Feb. 16, 2023) (final rule). VA addressed all substantive comments in a final rule, known as the Change in Rates Rule, which was published in the Federal Register on February 16, 2023. *See id.* at 10,033-35. The Change in Rates Rule was originally scheduled to go into effect on February 16, 2024, one year after its publication. *Id.* at 10,032.

On October 31, 2023 – merely three and a half months before the Change in Rates Rule was scheduled to take effect – petitioners asked the Court to review the Rule pursuant to 38 U.S.C. § 502. *See* Pet. for Review, ECF No. 1-2. Petitioners

---

[1] After the comment period closed, VA received several congressional inquiries expressing some of the concerns also raised in the comments. At Congress's request, VA officials also attended several meetings with Members of Congress and their staff in December 2022, during which VA outlined the terms of the proposed rule.

raise three principal points in their petition: *first*, they argue that the Change in Rates Rule is incompatible with 38 U.S.C. § 1728, a statutory provision governing VHA reimbursement of certain medical expenses, *id.* at 10; *second*, they argue that the Rule exceeds the authority Congress granted VA in the amended version of 38 U.S.C. § 111, *id.* at 11-12; and *third*, they contend that the Rule is arbitrary and capricious because VA "failed to state a satisfactory explanation for its choice," *id.* at 12-20.  Petitioners thus ask the Court to "hold unlawful and set aside the [Change in Rates Rule] in its entirety."  *Id.* at 30.

Soon after the Court docketed the petition, petitioners filed a motion for an administrative stay of the Change in Rates Rule pending the completion of judicial review.  *See* Pet. Mot. for Stay, ECF No. 3-1.  Relying on many of the substantive arguments that appear in their petition, petitioners argue in their motion that they are likely to succeed on the merits.  *Id.* at 13-20.  Petitioners further argue they will suffer irreparable injury absent a stay because the Change in Rates Rule "will become effective in little over three months," which would allegedly "forc[e] them to lay off employees" and "depriv[e] them of payments for services they render to veterans."  *Id.* at 20.  Finally, petitioners argue that the public interest "strongly

favors" a stay to "ensure that veterans keep their current level of access to ambulance services while this Court reaches the merits." *Id.* at 21.[2]

In an initial response to petitioners' motion, we explained that "forthcoming action by VA is expected to afford petitioners the relief they seek in the motion, thus rendering their request moot or at a minimum premature." *See* Resp. to Mot. for Stay at 2, ECF No. 17. More specifically, we informed the Court that "VA is currently developing a rule that would delay the Change in Rates Rule's effective date by approximately one year, until February 2025," which "should provide the parties with sufficient time to complete merits briefing, argue their respective positions, and obtain a ruling from this Court." *Id.* at 2-3.

In reply, petitioners expressed disbelief in the Secretary's stated plan, and took the position that it would be virtually impossible for VA to delay the Change in Rates Rule's effective date prior to February 2024. *See* Pet. Reply Supp. Mot. for Stay at 5-6, ECF No. 18. In the alternative, petitioners argued that a one-year delay would be insufficient because "it may take more than a year before judicial review is completed." *Id.* at 4. On December 15, 2023, the Court issued a *per*

---

[2] The Ambulance Association of Pennsylvania, acting as *amicus curiae* in support of petitioners, similarly argued that the Court should issue a stay because the Change in Rates Rule might financially impact ambulance service providers and cause a disruption to transportation services for Pennsylvania's veterans. *See* Amicus Br., ECF No. 12.

*curiam* order directing the Secretary to file a "substantive response" to petitioners' motion for stay.  Dec. 15, 2023 Order, ECF No. 23.

On December 29, 2023 – consistent with our prior representation to the Court – VA published a final rule to delay the Change in Rates Rule's effective date until February 16, 2025.  *See* Delay of Effective Date, 88 Fed. Reg. 90,120 (Dec. 29, 2023) (Delay Rule).  The Delay Rule has eliminated all the impending harms alleged in petitioners' motion (*i.e.*, potential loss of income and interruption to ambulatory services), and it has afforded the parties thirteen full months to litigate the merits of petitioners' claims.  Nonetheless, petitioners have not withdrawn their pending motion for stay.

## **ARGUMENT**

### I.    **Petitioners' Motion Should Be Denied As Moot**

Since the Court's December 15, 2023 order, the need for petitioners' motion has become moot.  "The premise of 'mootness' arises from the case or controversy requirement of Article III of the Constitution."  *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008).  Most fundamentally, mootness requires the existence of a "live controversy" between the parties, so as to "avoid advisory opinions on abstract propositions of law."  *Id.* (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)).  To avoid mootness, "an actual controversy must remain at all stages" of the case.  *Id.*  Mootness principles govern individual motions to the

same extent they govern cases as a whole.  *See, e.g., Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1364 (Fed. Cir. 2020) (denying pending motion as moot); *Biery v. United States*, 818 F.3d 704, 715 (Fed. Cir. 2016) (same).

To determine whether petitioners' motion for stay continues to present a live controversy, the Court must first ascertain what relief petitioners wish to obtain.  In their motion, petitioners ask the Court to stay implementation of the Change in Rates Rule pending the completion of judicial review, which would "simply preserve the status quo . . . while this Court reaches the merits."  *See* Pet. Mot. for Stay at 21.  When petitioners filed their motion in November 2023, the Change in Rates Rule was scheduled to take effect three and a half months later, *see* 88 Fed. Reg. at 10,032, and the Court's intervention would have been required to delay the Rule's imminent effects.  But the Delay Rule has now delayed the Change in Rates Rule's effective date to February 2025, *see* 88 Fed. Reg. at 90,120, which means that petitioners will not see any change to the status quo for at least thirteen more months.  With the status quo set to remain undisturbed for a prolonged period, the timing concerns underlying petitioners' motion have dissipated for the time being, thus eliminating any live controversy between the parties.  The Court should accordingly deny petitioners' motion for stay as moot.

Petitioners may argue in response that the Delay Rule does not eliminate the need for a stay because there is a chance that the Court will not resolve this appeal on the merits by the Change in Rates Rule's new effective date. *See* Pet. Reply Supp. Mot. for Stay at 4 (similarly arguing that "it may take more than a year before judicial review is completed"). But petitioners' speculation about the lifespan of this proceeding, which may or may not prove accurate, does not rebut the fact that Court action is no longer necessary. At present, the Court need not take action to preserve the status quo because VA has already done so through the Delay Rule. In the event it becomes apparent that a merits ruling will not be forthcoming by February 2025, petitioners can, of course, renew their request for a stay as appropriate, this time with the benefit of full merits briefing.[3]

## II.    Alternatively, Petitioners' Motion Should Be Denied Because Petitioners Do Not Satisfy The Conditions For A Stay

A stay of agency action pending judicial review is an extraordinary remedy that "is justified only rarely." *Louisiana v. Am. Rivers*, 142 S. Ct. 1347, 1348 (2022) (Kagan, J., dissenting from grant of an application for stay) (internal quotations omitted). As the Supreme Court has held, "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556

---

[3] For this reason, the "capable of repetition but evading review" exception to mootness does not apply here. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481-82 (1990) (explaining that the exception is limited to actions with an "inherently short duration of the opportunity for remedy," and holding that a litigant's ability to obtain judicial review in the future defeats the exception's applicability).

U.S. 418, 427 (2009) (cleaned up).  As such, a stay entered before an appellate

court has an adequate opportunity to consider the parties' respective positions "is

not a matter of right, even if irreparable injury might otherwise result to the

appellant." *Id.*

The Supreme Court has articulated a four-factor test for determining whether

a stay is appropriate:

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where
> the public interest lies.

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The first two factors – likelihood of success on the merits and irreparable injury to

the party seeking a stay – "are the most critical." *Id.*  The party asking to impose a

stay bears the heavy burden of establishing each of these factors. *Id.* at 433-34.

### A. Petitioners Have Not Made A Strong Showing That They Are Likely To Succeed On The Merits

Petitioners contend in their motion that they are likely to succeed on the

merits for three reasons: *first*, because the Change in Rates Rule is incompatible

with the payment methodology set out in 38 U.S.C. § 1728, Pet. Mot. for Stay at

13-14; *second*, because the Rule's application to both VA facilities and non-VA

facilities exceeds the authority within the amended version of 38 U.S.C. § 111, *id.*

9

at 15-16; and *third*, because the Rule is arbitrary and capricious, *id.* at 16-20.  As briefly explained below, none of these arguments has merit.

The Change in Rates Rule does not contravene 38 U.S.C. § 1728.  Section 1728 addresses VA reimbursement for "emergency treatment."  38 U.S.C. § 1728(a).  Although emergency treatment "includ[es] travel and incidental expenses," the statutory text makes clear that such expenses can only be reimbursed "under the terms and conditions set forth in [38 U.S.C. § 111]."  *Id.* Section 1728, plainly read, thus expressly provides that any reimbursement of travel and incidental expenses is subject to the "terms and conditions" set out in Section 111.  To the extent Section 1728 and Section 111 provide differing standards for the reimbursement of travel and incidental expenses, the latter, rather than the former, controls the inquiry.

Nor does the Change in Rates Rule exceed the scope of 38 U.S.C. § 111. Subsection (a) of Section 111 creates a general authorization for VA to pay for travel, and establishes several general restrictions on that authorization, in providing that "the Secretary may pay the actual necessary expense of travel . . . of any person to or from a Department facility *or other place . . .*" 38 U.S.C. § 111(a) (emphasis added).  Subsection (b) then sets out additional parameters for making the payments generally authorized under subsection (a) in specific circumstances. Thus, for instance, subsections (b)(1) and (b)(2) address the categories of persons

10

whose travel is eligible for reimbursement, whereas subsection (b)(3) addresses VA's authority to reimburse special modes of travel. *See generally id.* at § 111(b). In each one of these subsections, Congress expressly provided that payment is authorized to the extent it is "provided for in this section" or made "under this section." *See id.* at §§ 111(b)(1), (b)(2), (b)(3)(A). These repeated references to Section 111 as a whole, which appear throughout subsection 111(b), demonstrate that all of Section 111 applies to VA facilities and non-VA facilities alike, just as Congress made clear in subsection 111(a). Indeed, a contrary reading of Section 111 would be detrimental to veterans, as it would be inconsistent with longstanding VA regulations that equally permit eligible veterans to recover the cost of travel to and from VA facilities *and* non-VA facilities. *See* 38 C.F.R. § 70.10(a) (establishing that a veteran is eligible for reimbursement when he "travels to or from a VA facility *or VA-authorized health care facility*" (emphasis added)).[4]

Finally, the Change in Rates Rule is not arbitrary and capricious. Petitioners begin by pointing out that VA's projections of the charges for non-contract ambulance transport paled in comparison to the actual charges incurred in fiscal year 2022. *See* Pet. Mot. for Stay at 17-18. The discrepancy is hardly surprising, however, given the devastating effects of the COVID-19 pandemic during that

---

[4] VA has defined the term "VA-authorized health care facility" as "a non-VA health care facility where VA has approved care for an eligible beneficiary at VA expense." 38 C.F.R. § 70.2.

11

period. Regardless, arbitrary and capricious review is based on the reasonableness of an agency's analysis at the time of the rulemaking, not on subsequent developments. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence[.]"); *Ass'n of Priv. Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) (in conducting arbitrary and capricious review, courts are "limited to assessing the record that was actually before the agency"). New information that came to light months after VA published the Change in Rates Rule is immaterial to the Court's analysis.

Petitioners next argue that VA failed to adequately respond to concerns about compensating ambulance service providers in rural areas. *See* Pet. Mot. for Stay at 18-19. Not so. VA specifically addressed the issue as part of the Change in Rates Rule, explaining, in relevant part, that contract rates, which may differ from Medicare's ambulance fee schedule, can be used to account for "local considerations[] such as for rural areas." 88 Fed. Reg. at 10,034. VA's response addressing this issue is more than adequate to satisfy arbitrary and capricious review. *See Ass'n of Priv. Sector Colleges & Universities*, 681 F.3d at 441 (explaining that an agency's obligation to "address significant comments raised during the rulemaking" is "not particularly demanding"). And VA has followed through with its commitment to contracting in the time that followed; indeed, VA

has delayed implementation of the Change in Rates Rule in large part to facilitate additional contracting with ambulance service providers, including those operating in rural areas. *See* 88 Fed. Reg. at 90,120.

Lastly, petitioners contend that VA did not independently analyze Medicare's ambulance fee schedule for reasonableness. *See* Pet. Mot. for Stay at 19-20. This complaint is misplaced. In amending the statutory text, Congress expressly told VA which fee schedule to use in determining the reimbursement rate applicable to transportation by ambulance. *See* 38 U.S.C. § 111(b)(3)(C) (referencing "the fee schedule established under section 1834(*l*) of the Social Security Act"). Petitioners offer no authority, and we are aware of none, to suggest that VA could have overruled Congress's judgment by selecting a different schedule for this purpose.

To prevail on a motion for stay, petitioners must establish a "strong showing" of likelihood of success on the merits. *Nken*, 556 U.S. at 434. Thus, the Supreme Court has held, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id.* (internal quotations omitted). Here, even a cursory response to petitioners' arguments demonstrates that their strained interpretation of the applicable statutory text and misapplication of the arbitrary and capricious standard is highly unlikely to succeed. Petitioners have therefore failed to shoulder the heavy burden of satisfying the first stay factor.

**B.    Petitioners Will Not Be Harmed, Irreparably Or Otherwise, Absent A Stay**

Petitioners allege in their motion that the Change in Rates Rule will decrease the reimbursement they receive from VHA.  *See* Pet. Mot. for Stay at 20.  This consequence, in turn, will supposedly deprive some of them "of payments for services they render to veterans in their capacities as charitable organizations," and cause others to "lay off employees." *Id.*

Temporary economic loss does not ordinarily qualify as irreparable harm. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough," as "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here, even if VHA's reimbursement rate were to temporarily decrease during the pendency of this appeal, petitioners could obtain "corrective relief" by prevailing on the merits. Petitioners' temporary economic loss, which could be minimal if a decision is reached shortly after the Change in Rates Rule goes into effect, is not the type of harm considered "irreparable" in this context. *See Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J., in chambers) (denying a stay application in part because the applicants did not establish that economic loss would be so consequential as to "place the plan itself in jeopardy.").  Nor does the loss of

employees qualify as irreparable harm, as new employees can always be hired (or the same employees can be re-hired) in the future. *See SVD Stars II, LLC v. United States*, 138 Fed. Cl. 483, 487 (2018) ("[T]he loss of personnel . . . generally does not constitute irreparable injury[.]"); *Eskridge Rsch. Corp. v. United States*, 92 Fed. Cl. 88, 99 (2010) ("[T]he decision of [an employee] to work for [another company] is not the kind of injury that constitutes irreparable harm."); *Computer Scis. Corp. v. United States*, 51 Fed. Cl. 297, 323 n.91 (2002) ("[A] potential loss of employees is not an irreparable harm.").[5]

Petitioners' delay in filing their petition and seeking a stay further undermines the notion that the harm they allege is irreparable. The Courts of Appeals generally agree that delay in seeking preliminary relief, such as a preliminary injunction or a stay, is an indication that the moving party's claimed harm is not irreparable. *See, e.g., Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) ("[A]n unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and is a sufficient ground to deny a preliminary injunction."); *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (holding that although "there is no categorical rule that delay bars the issuance of

---

[5] The cases cited here concern motions for preliminary injunction rather than motions for a stay. These decisions are nonetheless relevant, however, given the "substantial overlap" between the two types of remedies. *Nken*, 556 U.S. at 434. This is so, the Supreme Court has explained, because "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Id.*

an injunction," "it is true that delay in seeking preliminary relief cuts against finding irreparable injury"); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."). Here, although VA publicized the Change in Rates Rule's effective date on February 16, 2023, *see* 88 Fed. Reg. at 10,032, it took petitioners over eight months to file their petition and seek a stay pending judicial review. Petitioners' failure to take immediate action, which would have drastically increased the likelihood of the Court completing judicial review without the need for a stay, is strong indication that the harms they allege are not truly irreparable.

But even if the harms petitioners allege could conceivably be irreparable, the pending motion for stay would nonetheless fail to satisfy this factor. As explained above, the Delay Rule has ensured that petitioners will continue to receive the current reimbursement rate from VHA through February 2025. *See* 88 Fed. Reg. at 90,120. With the rate undisturbed for a prolonged period, any argument that petitioners' reimbursement rate might decrease before the completion of judicial review is speculative at best. Such speculation, in turn, is plainly insufficient to obtain a stay pending judicial review. *Nken*, 556 U.S. at 434-35 ("[S]imply showing some possibility of irreparable injury . . . fails to satisfy the second factor." (internal quotations omitted)); *see also Di Biase v. SPX Corp.*, 872 F.3d

16

224, 230 (4th Cir. 2017) ("[A] plaintiff must demonstrate more than just a 'possibility' of irreparable harm.").

### C.     The Public Interest Does Not Favor A Stay Either

The final two factors, which merge into a single inquiry when the United States is the party opposing a motion for stay, ask the Court to assess the public interest. *Nken*, 556 U.S. at 435. Petitioners argue that the public interest supports a stay to "ensure that veterans keep their current level of access to ambulance services while this Court reaches the merits." Pet. Mot. for Stay at 21.[6] Veterans' access to adequate ambulance services is undoubtedly an important goal. But petitioners offer no credible rationale why a reduction in the rate VHA pays for ambulance services would necessarily translate to a diminution in the services themselves. *See id.* Such a conclusion is particularly doubtful where, as here, the rate reduction might only last a short time before the Court resolves the case on the merits. And in any event, because the rate VHA currently pays will remain the

---

[6] Petitioners also assert that "[t]here is generally no public interest in the perpetuation of unlawful agency action." Pet. Mot. for Stay at 21 (quoting *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102-03 (D.C. Cir. 2021)). This point, however, assumes that the Change in Rates Rule is indeed unlawful, a proposition this Court has yet to accept (and for the reasons stated above, is unlikely to accept).

same for the next thirteen months, a stay is unnecessary to protect the public

interest at this time.[7]

## **CONCLUSION**

For these reasons, the Court should deny petitioners' motion for a stay

pending judicial review.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

/s/ Borislav Kushnir
BORISLAV KUSHNIR
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-5928
Facsimile: (202) 353-0461
Email: Steven.Kushnir@usdoj.gov

January 16, 2024                    Attorneys for Respondent

---

[7] In the event the Court is disinclined to deny petitioners' motion outright,
the Court may hold the motion in abeyance until January 17, 2025, which is 30
days prior to the Change in Rates Rule's new effective date.

18

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1104

**Short Case Caption:** Metropolitan Area EMS Authority v. Secretary of Veterans Affairs

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes 4,520 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/16/2024

Signature: /s/ Borislav Kushnir

Name: Borislav Kushnir

Save for Filing