# United States Court of Appeals for the Federal Circuit

---

**METROPOLITAN AREA EMS AUTHORITY, AKA MEDSTAR MOBILE HEALTHCARE, VALLEY AMBULANCE AUTHORITY, QUAKER VALLEY AMBULANCE AUTHORITY, ALTOONA LOGAN TOWNSHIP MOBILE MEDICAL EMERGENCY DEPARTMENT AUTHORITY, DBA AMED,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2024-1104

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: December 9, 2024

---

BRIAN STIMSON, Arnall Golden Gregory LLP, Washington, DC, argued for petitioners. Also represented by SARA LORD.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY; ASHLEY CEDARS, BRYAN THOMPSON, Office of

General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, STOLL, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

Metropolitan Area EMS Authority, a.k.a. MedStar Mobile Healthcare, Valley Ambulance Authority, Quaker Valley Ambulance Authority, and Altoona Logan Township Mobile Medical Emergency Department Authority (collectively, "Petitioners") challenge the validity of the final rule *Change in Rates VA Pays for Special Modes of Transportation*, 88 Fed. Reg. 10,032 (Feb. 16, 2023) ("Final Rule"), promulgated by the Department of Veterans Affairs. The Final Rule amends 38 C.F.R. § 70.30(a)(4), changing how the VA pays for noncontract ground and air ambulance transports for eligible beneficiaries, purportedly pursuant to the VA's discretionary authority under 38 U.S.C. § 111(b)(3)(C). Because the Final Rule exceeds the statutory authority vested in the VA by § 111(b)(3)(C), we grant the petition and set aside the Final Rule.

## BACKGROUND

Congress has enacted an independent statutory regime for the coverage and payment of veterans' healthcare benefits via Title 38 of the United States Code. This coverage and payment regime includes 38 U.S.C. § 1728 ("Reimbursement of certain medical expenses") and 38 U.S.C. § 111 ("Payments or allowances for beneficiary travel"), which in relevant part relate to ambulance services for VA beneficiaries. Pursuant to § 1728, the Secretary of the VA reimburses or makes direct payments for veterans with service-connected conditions for certain emergency medical expenses. The relevant provisions include:

> (a) The Secretary shall, under such regulations as the Secretary prescribes, reimburse veterans eligible for hospital care or medical services under this chapter for the customary and usual charges of emergency treatment (including travel and incidental expenses under the terms and conditions set forth in section 111 of this title) for which such veterans have made payment, from sources other than the Department, where such emergency treatment was rendered to such veterans in need thereof . . . .
>
> (b) In any case where reimbursement would be in order under subsection (a) of this section, the Secretary may, in lieu of reimbursing such veteran, make payment of the reasonable value of emergency treatment directly . . . .

38 U.S.C. § 1728.

Section 1728(a) incorporates § 111, which gives the Secretary discretionary authority to pay for certain travel expenses incurred by eligible beneficiaries for medical purposes like examination, treatment, or care. The provisions from § 111 most relevant here include:

> (a) Under regulations prescribed by the President pursuant to the provisions of this section, the Secretary may pay the actual necessary expense of travel (including lodging and subsistence), or in lieu thereof an allowance based upon mileage (at a rate of 41.5 cents per mile), of any person *to or from a Department facility or other place* in connection with vocational rehabilitation, counseling required by the Secretary pursuant to chapter 34 or 35 of this title, or for the purpose of examination, treatment, or care. Actual necessary expense of travel includes the reasonable costs of airfare if travel by air is the only practical way to reach a Department facility. In addition to the mileage

> allowance authorized by this section, there may be allowed reimbursement for the actual cost of ferry fares, and bridge, road, and tunnel tolls.
>
> . . .
>
> (b)(3)(C) In the case of transportation of a person *to or from a Department facility* by ambulance, the Secretary may pay the provider of the transportation the lesser of the actual charge for the transportation or the amount determined by the fee schedule established under section 1834(l) of the Social Security Act (42 U.S.C. 1395m(l))[[1]] unless the Secretary has entered into a contract for that transportation with the provider.

38 U.S.C. § 111 (emphasis added). The parties do not dispute that "Department" means the "Department of Veterans Affairs" or "VA," and "Department facility" is a "VA facility" like a "VA Medical Center (VAMC), VA Outpatient Clinic (OPC), or VA Community Based Outpatient Clinic (CBOC)." 38 U.S.C. § 101(1); 38 C.F.R. § 70.2. The parties agree that the term "other place" is not defined in any statute or VA regulation but can be facilities served by ground and air ambulances that are not a "Department facility," such as VA-authorized or other private healthcare facilities.

The Secretary implements § 111 through 38 C.F.R. Part 70, Subpart A ("Beneficiary Travel and Special Mode Transportation Under 38 U.S.C. 111"). The current version of 38 C.F.R. § 70.30(a)(4) has been in effect since 2008. Pursuant thereto, the VA pays the "actual cost of a special mode of transportation" for eligible beneficiaries. 38 C.F.R.

---

[1] The amount determined by the fee schedule established under § 1834(l) of the Social Security Act (42 U.S.C. § 1395m(l)) is referred to as the Medicare fee schedule (MFS) amount.

§ 70.30(a)(4). A "special mode of transportation" is defined as "an ambulance, ambulette, air ambulance, wheelchair van, or other mode of transportation specially designed to transport disabled persons." 38 C.F.R. § 70.2.

In 2018, the VA Office of Inspector General (OIG) faulted the VA for failing to realize $11 million in savings for ambulance services between October 2012 and December 2015 due to the VA's failure to exercise its discretionary authority under § 111(b)(3)(C) to pay "the lesser of the actual charge for the transportation or the [Medicare fee schedule (MFS)] amount" for noncontract ambulance services. J.A. 1235–36 (quoting 38 U.S.C. § 111(b)(3)(C)).

The VA sought to implement the OIG's recommendation through rulemaking, and the Secretary published a proposed change to the current version of 38 C.F.R. § 70.30(a)(4) on November 5, 2020. The Secretary subsequently published the Final Rule, which reads in relevant part:

> a) [Subject to the other provisions of this section and subject to the deductibles required under § 70.31, VA will pay the following for beneficiary travel by an eligible beneficiary when travel expenses are actually incurred:]
>
> . . .
>
> (4) VA payments for special modes of transportation will be made in accordance with this section, unless VA has entered into a contract with the vendor in which case the terms of the contract will govern VA payments. This section applies notwithstanding 38 CFR 17.55 and 17.56 for purposes of 38 CFR 17.120.

> (i) Travel by ambulance. VA will pay the lesser of the actual charge for ambulance transportation or the [MFS] amount determined by the fee schedule established under section 1834(l) of the Social Security Act (42 U.S.C. 1395m(l)).
>
> (ii) Travel by modes other than ambulance.
>
> (A) VA will pay the lesser of:
>
> (1) The vendor's actual charge.
>
> (2) The posted rate in the State where the vendor is domiciled. If the vendor is domiciled in more than one State, the lowest posted rate among all involved States.
>
> (3) The posted rate in the State where transport occurred. If transport occurred in more than one State, the lowest posted rate among all involved States.
>
> (B) The term "posted rate" refers to the applicable Medicaid rate for the special mode transport in the State or States where the vendor is domiciled or where transport occurred ("involved States"). In the absence of a posted rate for an involved State, VA will pay the lowest among the available posted rates or the vendor's actual charge.

Final Rule, 88 Fed. Reg. at 10,036. The impact of the Final Rule is that, instead of paying the actual costs of ambulance services, the VA will now pay the lesser of the actual charge or the MFS amount for *all* ambulance

transports—including those to and from places other than Department facilities—unless the VA has entered into a contract with the ambulance vendor.[2] The Final Rule was originally scheduled to take effect in February 2024; however, the Secretary delayed its implementation until February 2029. *Changes in Rates VA Pays for Special Modes of Transportation; Delay of Effective Date From February 16, 2025, Until February 16, 2029*, 89 Fed. Reg. 88,888 (Nov. 12, 2024).

Petitioners seek review of the Final Rule. We have jurisdiction to review challenges to the VA's rulemaking pursuant to 38 U.S.C. § 502. *See McKinney v. McDonald*, 796 F.3d 1377, 1382–83 (Fed. Cir. 2015) ("Under [38 U.S.C. § 502], we have jurisdiction to review the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." (internal quotation marks and citation omitted)).

## DISCUSSION

"We review petitions under [38 U.S.C.] § 502 in accordance with the standard set forth in the Administrative Procedure Act ('APA'), 5 U.S.C. §§ 701–706." *Id.* at 1383 (citing *Nyeholt v. Sec'y of Veterans Affs.*, 298 F.3d 1350, 1355 (Fed. Cir. 2002)). Under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court will "hold unlawful and set aside agency action" that is

[2] If the VA enters into a contract with an ambulance vendor, then the vendor is not subject to the payment methodology contemplated in the Final Rule, and the VA would instead pay the contracted amounts for services provided.

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

Petitioners contend that the Final Rule is "not in accordance with law" because it exceeds the statutory authority granted to the VA under § 111(b)(3)(C). The VA asserts that Petitioners forfeited their challenge to its statutory authority under § 111(b)(3)(C) because no party raised this issue in front of the VA during the notice and comment period of the rulemaking. We turn first to the VA's argument on forfeiture before addressing the merits of Petitioners' challenge.

I

The VA contends that this court should extend the "foundational principle" that "'courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice'" to review of an agency's rulemaking process. Resp. Br. 17 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). Specifically, the VA urges this court to adopt the D.C. Circuit's rule that a party will forfeit an argument that was not raised to an agency during the notice and comment period of rulemaking. *Id.* at 18 ("[T]he Court of Appeals for the District of Columbia Circuit has long held that 'a party will normally forfeit an opportunity to challenge an agency rulemaking on a ground that was not first presented to the agency for its initial consideration' during the comment period." (quoting *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1150 (D.C. Cir. 2005)). The VA argues that the D.C. Circuit has applied this forfeiture rule even to "arguments that an agency lacked statutory authority to promulgate the rule in question," relying on *Koretoff v. Vilsack*, 707 F.3d 394, 397–99 (D.C. Cir. 2013). Resp. Br. 19. It is undisputed that no party raised the issue of

the VA's statutory authority under § 111(b)(3)(C) during the notice and comment period.

Petitioners note that this court has not adopted the D.C. Circuit's rule, that the D.C. Circuit's rule has underpinnings in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which was recently overruled by the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and that this court has previously held that a party is not required to exhaust administrative remedies where its contentions involve the resolution of a statutory issue that "does not require the development of a factual record, the application of agency expertise, or the exercise of administrative discretion." *Beard v. Gen. Servs. Admin.*, 801 F.2d 1318, 1321 (Fed. Cir. 1986).

In overturning *Chevron*, the Supreme Court in *Loper Bright* held that *Chevron*'s step-two requirement that a reviewing court defer to an agency's reasonable statutory interpretation could not be squared with the reviewing court's duty under the APA:

> The APA . . . codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "*all* relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions.

*Loper Bright*, 144 S. Ct. at 2261. The Supreme Court explained that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 2273.

We need not resolve these issues about *Beard* and the scope of the D.C. Circuit's forfeiture rule in light of *Loper Bright*, however, because even if we were to adopt the D.C. Circuit's forfeiture rule, we would also adopt the D.C. Circuit's exceptions to that rule. These exceptions include the "key assumption" doctrine: "Under the 'key assumption' doctrine, an agency has the 'duty to examine key assumptions as part of its affirmative burden of promulgating and explaining a non-arbitrary, non-capricious rule.'" *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 589 (D.C. Cir. 2019) (quoting *Okla. Dep't of Env't Quality v. EPA*, 740 F.3d 185, 192 (D.C. Cir. 2014)). This includes "aspects of a rule that are foundational to its existence, such as assumptions regarding the agency's statutory authority." *Id.* (citing *Nat. Res. Def. Council v. EPA*, 755 F.3d 1010, 1023 (D.C. Cir. 2014)). We conclude that the D.C. Circuit's "key assumption" doctrine would apply to this case, as the VA had a duty to examine whether it in fact had the authority to promulgate the rule under the statutory section the VA explicitly relied on as the basis for the rulemaking. *See* Final Rule, 88 Fed. Reg. at 10,033 ("VA proposed amending its beneficiary travel regulations to implement the discretionary authority in 38 U.S.C. [§] 111(b)(3)(C) . . . ."). Therefore, no comment was necessary to preserve Petitioners' challenge to the VA's authority to promulgate the Final Rule under § 111(b)(3)(C).

## II

We now turn to Petitioners' merits challenge to the VA's statutory authority under § 111(b)(3)(C) and their arguments as to why the Final Rule exceeds that authority.

"In statutory construction, we begin with the language of the statute." *Ireland v. United States*, 101 F.4th 1338, 1343 (Fed. Cir. 2024) (quoting *Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016)). In looking at the text of the statute, "we are not guided by a single

sentence or member of a sentence, but look to the provisions of the whole law." *Id.* (quoting *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990)). In addition to the statute's text, we also employ the traditional tools of statutory construction, including "the statute's structure, canons of statutory construction, and legislative history." *Id.* (quoting *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998)).

Here, § 111(a) reads: "[T]he Secretary may pay the actual necessary expense of travel . . . of any person *to or from a Department facility or other place* . . . for the purpose of examination, treatment, or care." 38 U.S.C. § 111(a) (emphasis added). In contrast, § 111(b)(3)(C) states only that "[i]n the case of transportation of a person *to or from a Department facility* by ambulance, the Secretary may pay the provider of the transportation the lesser of the actual charge for the transportation or the [MFS] amount." *Id.* § 111(b)(3)(C) (emphasis added). Thus, while in § 111(a) Congress authorized the Secretary to "pay the actual necessary expense" for travel "to or from a Department facility *or other place*," Congress only authorized the Secretary in § 111(b)(3)(C) to apply the "lessor of" payment methodology for transports "*to or from a Department facility* by ambulance." Conspicuously missing from § 111(b)(3)(C) is the "or other place" language that Congress expressly stated in the earlier subsection.

"We assume Congress means what it says and says what it means." *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1382 (Fed. Cir. 2024) (holding that where "Congress used two different phrases in two separate provisions" in 35 U.S.C. § 102—i.e., "disclosures" in an earlier subsection and "publicly disclosed" in a later subsection—the court will interpret the "new phrase," "publicly disclosed," to have a different meaning than the broader phrase "disclosures"). And "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or

insignificant." *Id.* (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

As Congress explicitly included "or other place" in § 111(a), it could have also added that same language to § 111(b)(3)(C). Rather, Congress chose to exclude it, and instead used narrower language in § 111(b)(3)(C). We understand this difference to mean Congress in fact intended two different things—indeed, if Congress meant for the phrase "to or from a Department facility" to be as broad as the phrase "to or from a Department facility or other place," "it easily could have said so." *Sanho*, 108 F. 4th at 1382.

We can only conclude that the omission of the "or other place" language from § 111(b)(3)(C) was deliberate on the part of Congress. Consequently, the VA's rulemaking extending the "lessor of" methodology to all noncontract ambulance transports—instead of only noncontract ambulance transports "to or from a Department facility"—in the Final Rule exceeds the discretionary authority granted to the VA by Congress under § 111(b)(3)(C). The Final Rule is thus "not in accordance with law" and must be vacated.

The VA offers two counterarguments to Petitioners' statutory interpretation of § 111. First, the VA cites the second sentence of § 111(a), which reads that the "[a]ctual necessary expense of travel includes the reasonable costs of airfare if travel by air is the only practical way to reach a Department facility." 38 U.S.C. § 111(a). The VA contends that the Petitioners' interpretation of "a Department facility" cannot be correct because otherwise the VA would not have statutory authority to pay for travel by air to non-VA facilities, reducing travel reimbursements

the VA is now providing. Resp. Br. 26–27.[3] Petitioners, however, contend that the second sentence of § 111(a)'s reference to "airfare" relates not to air ambulance transports, but rather to commercial flights.[4] Pet. Reply Br. 11. Petitioners also confirm that, under their interpretation of § 111(a), the second sentence only authorizes the VA to pay for commercial airfare to or from a "Department facility." *Id.*; *see also* Oral Arg. at 9:29–11:10, 30:01–30:11.

We are not convinced by the VA's argument. The fact that our interpretation of the plain language of § 111 would limit the second sentence of § 111(a) to allow the VA to cover "airfare" only to or from "a Department facility" does not

---

[3] The VA further supports this argument by noting that the additional guidance on paying for air travel in § 111(b)(4) only mentions "a Department facility," and, in fact, nowhere in § 111(b) is the "or other place" language used. Resp. Br. 26–27. Petitioners, however, also confirm that § 111(b)'s lack of reference to "other place[s]" accords with their interpretation of § 111 as a whole. Pet. Reply Br. 12. For the same reasons we find the VA's arguments about the second sentence of § 111(a) unpersuasive, we find its arguments about § 111(b) unpersuasive.

[4] Despite Petitioners raising this argument in their reply brief before this court, counsel for the VA was unwilling at oral argument to state one way or the other what the VA's position is on whether the second sentence of § 111(a) is about commercial flights and thus not relevant to air ambulance transports. Oral Arg. at 18:10–18:58, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=24-1104_07102024.mp3. Counsel for the VA did concede, however, that the second sentence of § 111(a) is neither definitional nor "define[s] everything that the phrase ['actual necessary expense of travel'] might mean." *Id.* at 16:35–17:23.

change our reasonable conclusion that "a Department facility or other place" is a broader phrase with a different meaning than just "Department facility." Congress's choice of language in the second sentence of § 111(a) suggests its intent that the VA only pay for airfare to or from a "Department facility." The VA fails to show why that reading would lead to absurd results, and it is easy to see why Congress may have made such a policy choice. *E.g.*, Oral Arg. at 9:30–11:10 ("[A]irfare as opposed to ambulance transportation is non-emergent. And the VA would have a compelling reason to limit commercial airfare to non-VA facilities because VA facilities are going to most likely provide the same non-emergent care that non-VA facilities would provide. So, I think actually from a policy perspective . . . the plain language reading of that sentence makes rational sense." (cleaned up)), 30:19–30:53. As such, nothing in this second sentence leads us to conclude that our interpretation of § 111 is wrong.

Second, while the VA concedes that "Congress used the full phrase 'a Department facility or other place' in the first sentence of subsection (a)," the VA argues that Congress clearly "used the shorthand 'a Department facility' in the second sentence" of § 111(a), thus illustrating that "Congress had used 'a Department facility' as shorthand for 'a Department facility or other place' within Section 111." Resp. Br. 24. The VA relies on *N.H. Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021), for this "shorthand" argument.[5]

---

[5] Counsel for the VA clarified at oral argument that it was not its contention that there is a "shorthand" canon of statutory construction; instead, its only contention is that in reading the plain language of a statute in context, the court may conclude that Congress was employing shorthand in drafting a particular act, as the First Circuit

In *N.H. Lottery*, the same sentence of the Wire Act referenced, in a first clause, transmissions related to "bets or wagers on any sporting event or contest," and then, in a second, subsequent clause, only transmissions related to "bets or wagers." 986 F.3d at 54. The First Circuit described this text as "what appears to be a clear example in this very statute of Congress using shorthand to carry over a phrase from Clause One to Clause Two, which may suggest a broader pattern of borrowing by shorthand." *Id.* at 57. The First Circuit determined that "Congress's consistent syntactic approach anticipated that a term, which is explicitly qualified in one instance, could be read as similarly qualified in other instances, at least where necessary to avoid odd and unlikely results." *Id.* at 58. This led the First Circuit to read the second clause's reference to transmissions to also relate to the full phrase "bets or wagers on any sporting event or contest." *Id.* at 58–59. Attempting to apply that principle here, the VA contends that "it would have made little sense for Congress to broadly refer to travel to or from 'a Department facility or other place' within the general grant of authority in subsection (a), yet narrow that scope within the additional payment parameters established in subsection (b)." Resp. Br. 26. We disagree.

*N.H. Lottery* is readily distinguishable from this case. *N.H. Lottery* addressed "the rule of the last antecedent" in looking at a shortened clause immediately following a similar longer clause in the same sentence, where the court held that reading the clauses to mean two different things would lead to absurd results. 986 F.3d at 56–58. Here, there is no basis for concluding that Congress used the phrase "a Department facility" to refer to "a Department facility or other place." This case does not address an

so concluded in *N.H. Lottery* with the Wire Act, 18 U.S.C. § 1084. Oral Arg. at 14:27–15:02.

antecedent problem, and the VA does not contend otherwise. Moreover, as discussed above, we are not convinced that reading "a Department facility" to mean something different than "other place" would lead to absurd results. The statutory language at issue in this case is quite different from that in *N.H. Lottery*. The first, extended clause in *N.H. Lottery* was "bets or wagers on any sporting event or contest," and the later, shortened clause was "bets or wagers," dropping the modifier "on any sporting event or contest." In contrast, here the VA asks that two distinct places—first, "a Department facility" and, second, an "other facility"—that are separated by "or" be treated as the same.[6] In our view, this is a much larger grammatical leap than the one in *N.H. Lottery*. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings . . . ." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

## CONCLUSION

Because we conclude that the Final Rule "is not in accordance with law," as it exceeds the discretionary authority Congress granted the VA under 38 U.S.C. § 111(b)(3)(C), we need not reach Petitioners' other arguments challenging the rule.[7] For the foregoing

---

[6] Indeed, the VA concedes "or other place" "refers to any place that is not a 'Department facility,'" and the word "other" should be understood as modifying "place" to be "*distinct* from the one already mentioned." Resp. Br. 23 (quoting *Other*, WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1957)) (emphasis added).

[7] Petitioners also sought to stay the Final Rule pending this appeal. *Motion for Stay Pending Judicial Review*, ECF No. 3. Because we have reached a decision on

reasons, we grant the petition and set aside the final promulgated rule *Change in Rates VA Pays for Special Modes of Transportation*, 88 Fed. Reg. 10,032 (Feb. 16, 2023).

**GRANTED**

COSTS

Costs to Petitioners.

---

the merits prior to the Final Rule going into effect, Petitioners' motion to stay is denied as moot.